FILED

MORENIKE BALOGUN
225 35th Place
Unit A
Manhattan Beach, CA 90266
(302)233-3076
Morenike.Balogun@gmail.com
Plaintiff In Pro Per

2017 MAY -5  AM 9: 30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MORENIKE BALOGUN,

    Plaintiff,

    vs.

WINN LAW GROUP, APC(s), FIRST

RESOLUTION INVESTMENT CORPORATION

    Defendant(s)

Case No.: SACV 17 - 0 0 7 9 6 - DOC(JCGx)

COMPLAINT FOR DAMAGES, INJUNCTIVE & DECLARATORY RELIEF AND AN ACCOUNTING FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §1692 AND THE CALIFORNIA DEBT COLLECTION PRACTICES ACT, FRAUD AND MISREPRESENTATION

PAID

MAY − 5 2017

Clerk, US District Court
COURT 4612

1.   This is an action arising under the Fair Debt Collection Practices Act ("Rosenthal FDCPA"), 15 U.S.C. §1692 Section 2(a) , 8, and 10; California's Rosenthal Fair Debt Collection Practices Act Civil Code §1788,  Califorina Fair Debt Buying Practices Act ("CFDBPA" Civil Code §1788.50, and Fair Credit Reporting Act ("FCRA") and the Federal Trade Commission Act ("FTC Act")  to obtain monetary civil penalties, a permanent injunction, restitution, disgorgement and other equitable relief for violations of the FDCPA, CFDBPA, and the FTC by Winn Law Group and First Resolution Investment.

2.   This court has jurisdiction over this matter because both Winn Law Group and plaintiff Morenike Balogun are residents of the state of California and Winn law group seeks to garnish plaintiff's wages in the state of California.

1

3. Venue is proper in the United States District Court for the Central District of California.

**PLAINTIFFS**

4. This action is brought Pro per by Morenike Balogun a permanent resident of the state of California since August 2004 and a victim of unfair debt collection practices by the defendant(s).

**DEFENDANTS**

5. Defendant First Resolution Investment is a Washington Corporation and at times relevant to this complaint, First Resolution Investment has transacted business throughout the United States (including in California) and is one of the largest debt collectors in the United States. First Resolution Management was previously fined for deceptive practices. In 2016, its revenue is in excess of $1,000,000 dollars. It has numerous employees.

6. Winn Law Group, A.P.C. is a "debt collector" as defined in section 1788.30 of the Fair Debt Collections Practices Act and Section 1788.50 of the California Fair Debt Buying Act.

**COMMERCE**

7. At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting "commerce" as defined in Section 4 of the FTC Act, 15 U.S.C. 44.

**DEFENDANT'S BUSINESS PRACTICES**

7. From their offices in Southern California and throughout the United States, Winn Law Group, APC and First Resolution Investments (collectively "Defendants") engage in consumer debt buying and collection activities throughout the United States.

2

8. Defendants routinely attempt and often succeed in obtaining judgments, Liens and Wage Garnishments on debts that are artificially inflated through unlawfully high interest rates in violation of the Rosenthal FDCPA and the California Fair Debt Buying Act *Currier v. First Resolution Investment Corp.*, 956 F.Supp.2d. 747.

9. Defendants regularly attempt to collect debts by seeking default judgments in distant venues and jurisdictions in order to circumvent stated contract law and severely disadvantage and harm the consumer, in this case, the plaintiff, Morenike Balogun was sued in the State of Delaware despite being a permanent resident of the state of California at the time of suit and the credit card contract agreed to by all parties, their heirs and assigns being expressly governed by the laws of the state of New Hampshire (see Exhibits A and B).

### STATEMENT OF FACTS

10. Fourteen years ago as a struggling college student in New Hampshire, I signed up for a Providian Visa Credit Card. I maintained the card through the majority of my four years at school, but due to financial pressures my senior year and my need to graduate on time, I could not keep up with my payments and ended up defaulting on my Providian Visa credit card in my final semester of my senior year. I signed the credit card contract in New Hampshire, received statements in my college mailbox in New Hampshire and made payments in New Hampshire from a New Hampshire bank account. The credit card contract clearly states that it is <u>forever governed by New Hampshire law</u> (See Exhibit A). Defendants are well aware and have always been aware of the fact that New Hampshire law is the choice of law agreed upon and thus governs the Providian contract. Despite that knowledge, while I was living in California, First Resolution contacted me via telephone and through the mail in California in an attempt to collect the debt and thus was well aware that I was attending graduate school in San Diego (I have been a California resident since August 2004), in 2005

First Resolution LLC sought a default judgment against me in the state of Delaware (not in CA where I lived or in NH where the contract was signed). I was never personally served with process, instead, Defendant's served my sister at my father's home (See Exhibit C). At the time she was served, my sister told the process server that I did not live at that address and was a resident of the state of California (See Exhibit C). Having knowledge that I was no longer a resident of Delaware, where I had only worked a summer job the previous year and been present in the state for two and a half months the entire year, defendants nevertheless proceeded with suit in that venue. Due to my absence from the state, Defendant's won that default judgment in 2005 for about $7,000.00 including attorney's fees and interest (the original default amount was only about $3,800.00). I disputed this judgment, the amount of the judgment, as well as the contract interest rate and post judgment interest rate of 27.99%, which was requested by First Resolution and subsequently Winn Law without any evidence of it's legality. The Providian credit card contract which I signed does not have a contract rate of 27.99% (See Exhibit A). Again, First Resolution and Winn Law group have always had the underlying Providian Credit Card Contract and it's terms which states a lower contract interest rate than they sought and dictates a post judgment interest rate as determined by New Hampshire law.

Then, First Resolution and Winn Law Group, waited over ten years to try to collect this debt. In an attempt to settle this debt, I contacted Mr. Stephen Doughty, the first lawyer hired by First Resolution in 2008 after leaving Law school, but I was told that he no longer owned the debt and could not accept any payment from me. I then contacted First Resolution both by phone and mail and was told that the debt was not owned anyone and therefore that there was no one I could pay. At both points of contact I disputed the amount of the debt and the interest rate claimed. I have always disputed this debt.

Despite my many attempts over the years, I did not hear from First Resolution for the next six years. In that time, I worked tirelessly in my career, battling two bouts of long-term unemployment, the last of which ended in April of last year. First Resolution and Winn Law group finally reached out to me in the form of a sister state judgment seeking to collect

almost $21,509 dollars in 2014 when I was unemployed (See Exhibit D). This entry of judgment clearly states that Defendant(s) had charged plaintiff 27.99% as post judgment interest for ten years and sought to collect that amount in violation of contract terms and New Hampshire law (again see Exhibit, A, C and D). I reached out to them and disputed the amount of the debt and let them know that I was interested in settling for a fair amount but would not pay more than I contractually owed under the law (See Exhibit E). Despite my attempt to be reasonable, Winn Law Group refused to correct the error in the amount of money sought and the interest rate claimed contrary to contract terms. I also showed defendant(s) evidence of my unemployment. While I was unemployed, Winn Law group contracted with Esser James collections in New York to call my parents, my siblings, my friends and even my employers in an attempt to harass me into borrowing or coming up with the money. Being unemployed and only having sporadic temp jobs at the time, I had nothing to offer them, so the harassment continued for almost a year. (I was unemployed for 18 months). Despite orders to cease and desist, myself, my family, my temp employers and my friends continued to receive harassing telephone calls from Esser James until May of 2016.

In April of 2017 I received an order for wage garnishment for over $28,325.31 entered by Winn Law group on my California state income (See Exhibit F). The $28,325.31 dollars sought by Winn law group, reflects the arbitrary 27.99% interest rate that has ben charged by Defendant's since the date of default and in violation of contract terms since 2002. I made a complaint to the Consumer protection bureau once again stating the discrepancy between the interest rate claimed by defendants and the stated contract rate. In their response, defendant's acknowledged that they have been aware of my dispute and the discrepancy since 2014 and stated that they would make every effort to correct the issue (see exhibit G). However, Defendant's persisted to misrepresent the contract rate and refused to correct their misstatement, instead continued to misrepresent the interest rate and amount of debt in a recent declaration (see Exhibit H).

Contrary to California and Federal Law, First resolution Management and Winn Law Group have never included the underlying credit card contract in any of their pleadings,

requests for judgment, or requests for validation of the debt, because on its face, the credit card contract is more favorable to Plaintiff, Morenike Balogun. Both California Law and Federal law require proof of the actual amount of the debt, including the underlying credit card contract, the credit card statement, and/or statement of default sent to the consumer. Winn Law group and First Resolution have never produced the underlying Providian credit card contract to the court in seeking a judgment because the contract dictates a lower interest rate and less favorable choice of law clause that is favorable to plaintiff and demands a lower judgment amount. Federal and California law strictly prohibits collection after so long a term for this exact reason. If debt collectors are not incentivized to collect within a reasonable amount of time in an appropriate jurisdiction, these types of abuses will occur.

## A FAIR AND HONEST ACCOUNTING

Plaintiff's fair and honest accounting of the Providian credit card contact debt attached herewith as (Exhibit J) puts plaintiff's actual contractual obligation at only $9,746.08, nearly $20,000 dollars less than the amount being garnished by defendant(s). Plaintiff arrived at this amount by applying the contract rate of 23.99% interest from the date of default in 2002 to the date of judgment in 2005. Then plaintiff applied a post-judgment interest rate of 4.0% for twelve years as dictated by the state of New Hampshire in 2005 (See Exhibit B).

"Pursuant to RSA 336:1 Rate of Interest. –

II. The annual simple rate of interest on judgments, including prejudgment interest, shall be a rate determined by the state treasurer as the prevailing discount rate of interest on 26-week United States Treasury bills at the last auction thereof preceding the last day of September in each year, plus 2 percentage points, rounded to the nearest tenth of a percentage point. On or before the first day of December in each year, the state treasurer shall determine the rate and transmit it to the director of the administrative office of the courts. As established, the rate

COMPLAINT FOR DAMAGES, INJUNCTIVE & DECLARATORY RELIEF AND AN ACCOUNTING FOR VIOLATIONS OF THE FAIR DEBT

COLLECTION PRACTICES ACT 15 U.S.C. §1692

shall be in effect beginning the first day of the following January through the last day of December in each year. "(See List Exhibit B)

The credit card contract is governed by contract law and Plaintiff believes that if she is being sued to pay monies owed under the terms of the contract, then defendant(s) must also be held to the same terms of the agreed upon contract. The contract cannot be distorted or misrepresented to benefit defendant when it suits them to the detriment of plaintiff. Plaintiff begs the court to faithfully look at the underlying credit card contract and **apply the contract law equally to both parties**.  In doing so, plaintiff believes the court will find that she owes no more than $9,746.08 and not the $28,325.31 plus interest being garnished by defendants.

## **VIOLATIONS OF THE FDCPA**

### **COUNT I**
### Improper Venue

Legal Actions By Debt Collectors

15 U.S.C. §1692i of the FDCPA states that:

"Any debt collector who brings any legal action on a debt against a consumer shall—(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity---

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

I have been a legal resident and registered voter in the state of California since 2004 and at the time the action was commenced, lived in San Diego where I attended graduate school (See Exhibits I and *Note supplemental materials forthcoming including affidavits, Grad School Registration information, and/or DMV and voter registration information). Defendant(s) were aware of this fact as they contacted me and were told that I was enrolled in graduate school and was now a California resident prior to suit.

Defendant(s) were again told by my sister that I did not live in Delaware when she was served process in Dover in 2005. Despite this knowledge, defendant's served process on my sister in Delaware (see exhibit E) and obtained a default judgment against me in Delaware – a venue prohibited by the FDCPA.

## COUNT II

### (9) False or Misleading Representations

15 U.S.C. §1692e of the FDCPA states that :

"A debt collector may not use any false deceptive or misleading representations or means in connection with the collection of any debt…

(2) the false representation of --

(A) the character, amount or legal status of any debt or

Defendant has knowingly charged a higher interest rate than stated in the underlying Providian credit card contract in violation of both contract law and the FDCPA (See Exhibit A). Defendant had knowledge of the mis-statement and knowingly persisted in their misrepresentation. Defendant(s) have since entered into documentation and published to third parties, including my current employers, the Financial Consumer Protection Agency, the lower court, the sheriff's office, and credit bureaus their fraudulent amount claimed on several occasions. The FDCPA states that each separate occasion of misstatement of the debt carries penalties of up to $1,000 per occurrence. Plaintiff put's defendant(s) number of occurrences as follows:

1. Published in Credit inquiries in 2014-2016
2. Published in transfer of entry of sister state judgment in 2014
3. Published in request to verify debt in 2014
4. Published in Lower court Affidavit in May 2017
5. Published to Plaintiff's Employer's Payroll office (Cast & Crew) in April 2017
6. Published to Sheriff's office in Wage Garnishment order April 2017
7. Published to Consumer Financial Protection Bureau in April 2017

COMPLAINT FOR DAMAGES, INJUNCTIVE & DECLARATORY RELIEF AND AN ACCOUNTING FOR VIOLATIONS OF THE FAIR DEBT

COLLECTION PRACTICES ACT 15 U.S.C. §1692

8. Credit Inquiry 2017

9. Published to Esser James in 2015- 2016

Plaintiff, requests nine thousand dollars ($9,000.00) in damages for defendant(s) nine separate publications of the misrepresented debt amount to third parties within the last three years.

## COUNT III

(7) Annoying, Abusive, or Harassing Telephone Calls

1.  15 U.S.C. §1692d prohibits debt collectors from engaging in any conduct "the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." Section 806(5) specifically prohibits debt collectors from causing a telephone to ring or engaging in telephone conversation with intent to annoy abuse or harass any person on the called number.

2.  15 U.S.C. §1692c Communication in connection with debt collection, section (b) prohibits debt collectors from calling third parties other than the debtor or the debtor's attorney without the debtor's express written permission.

3.  15 U.S.C. §1692c Communication in connection with debt collection, section (c) prohibits debt collectors from calling once a notice to cease and desist has been given verbally or by written statement.

Defendants contract with outside debt collectors that will call for them. In this instance, defendant(s) contracted with Esser James from 2015 to 2016. Esser James engaged in deceptive and harassing practices such as calling third parties wholly unrelated to the debt or contract to seek information on plaintiff and harass plaintiff into agreeing to unsubstantiated payments and sums. In addition, Esser James routinely called as early as five and six am Pacific time, despite both Winn Law Group and Esser James having full knowledge of my permanent residence located in the state of California since 2004.

Also having served me here in Los Angeles, defendants were aware that calling at such times were in violation of Federal and state collection laws. On behalf of Winn Law Group and First Resolution Investment Corporation, Esser James on multiple occasions called:

1. Called me prior to 8am Pacific time until April of 2016.
2. Called me several times a day non-stop until April of 2016.
3. Called my father in Delaware in an effort to shame me until April of 2016
4. Called my brother in San Diego to harass him and embarrass me until April of 2016.
5. Called my sister in Phoenix Arizona to harass her and embarrass me until April of 2016.
6. Called my roommate and good friend in an effort to embarrass and shame me until April of 2016.
7. Called my temp job to harass me until April of 2016.

Although these calls were too numerous to count, on each occasion Esser James disclosed that I owed money and needed to pay. For each call made to these third parties or in violation of the FDCPA, I ask the court to grant damages in the amount of at least $7,000 for the harassment detailed above.

## VIOLATIONS OF THE CFDBPA

California Civil Code 1788.52(a) states that a debt buyer cannot make any written statement to a debtor in an attempt to collect a consumer debt unless the debt buyer possesses the following information:

**The debt balance at charge off and an explanation of the amount, nature, and reason for all post charge-off interest and fees, if any, imposed by the charge-off creditor or any subsequent purchasers of the debt.**

The date of default or the date of the last payment.

COMPLAINT FOR DAMAGES, INJUNCTIVE & DECLARATORY RELIEF AND AN ACCOUNTING FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §1692

The name and an address of the charge-off creditor at the time of charge off, and the charge-off creditors account number associated with the debt. The Charge off creditors name and address shall be in sufficient form so as to reasonably identify the charge-off creditor.

The name and last known address of the debtor as they appeared in the charge off creditor's records prior to the sale of the debt. If the debt was sold prior to 1/1/14, the name and last known address of the debtor as they appeared in the debt owner's records on 12/31/13 shall be sufficient.

The names and addresses of all persons or entities that purchased the debt after charge off, including the debt buyer making the written statement. The names and addresses shall be in sufficient form so as to reasonably identify each such purchaser. Civil Code 1788.52(a)

## COUNT IV

### (5) Failures of disclosure

Pursuant to the above mentioned act, Winn Law group and First Resolution Investment Corp on several occasions in an effort to unjustly enrich themselves purposefully:

1. Failed to disclose original default date and amount,
2. Failed to disclose original contract terms including state of jurisdiction,
3. Failed to disclose that New Hampshire state law governs the contract and time barred litigation and collection at time of default judgment.
4. Failed to disclose a full chain of custody of debt.
5. Failed to correct the debt amount after a dispute was filed and copy of initial/original contract stating the correct interest rate and state of jurisdiction was provided to Winn Law Group by plaintiff Morenike Balogun in disputing the stated debt amount and statute of limitations.

---

COMPLAINT FOR DAMAGES, INJUNCTIVE & DECLARATORY RELIEF AND AN ACCOUNTING FOR VIOLATIONS OF THE FAIR DEBT

COLLECTION PRACTICES ACT 15 U.S.C. §1692

For each of these five counts, plaintiff seeks $1,000 per occurrence for a total of $5,000.

## VIOLATIONS OF THE FTC ACT

1.  Section 5(a) of the FTC Act, 15 U.S.C. 45(a) prohibits "unfair or deceptive acts or practices in or affecting commerce." Misrepresentations or deceptive omissions of material facts of the credit card contract including applicable state law. Defendant(s)'s willful omission of the credit card contract in all of their pleadings and request for judgment, was intentional obfuscation of the credit card contract terms- especially the favorable choice of law agreed upon in the credit card contract - New Hampshire. (Again, see Exhibit A ). This willful omission by Winn Law Group and Firs Resolution Investment Corp. constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

Plaintiff requests that defendant(s) be admonished by the court, appropriate damages be awarded in the court's discretion, and this complaint reported by the court to the appropriate authorities for prosecution under the act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Morenike Balogun, pursuant to 15, U.S.C. §1692 (FDCPA) and California Civil Code 1788.30 (CFDBPA) and the Court's own equitable powers, requests that the court:
1.  Enter judgment against Defendants and in favor of Plaintiff for each law violation alleged in this complaint;
2.  Award Plaintiff monetary civil penalties for each violation of the FDCPA occurring within five (5) years preceding filing of this complaint; and
3.  Award Plaintiff monetary civil penalties for each violation of the CFDBPA occurring within five (5) years preceding filing of this complaint; and

4. Award Plaintiff $1,000 for each violation detailed above for a total of $21,000.

5. Award plaintiff additional punitive damages in the amount of $15,000.

6. Enter a permanent injunction to prevent future violations of the FDCPA, the CFDBPA by defendants and the FTC Act;

7. Grant Plaintiff a Permanent Injunction and Permanent restraining order against further wage garnishment.

8. Award such relief as the Court finds necessary to redress injury to plaintiff resulting from Defendant's violations of the FTC Act and the FDCPA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill gotten monies through wage garnishment of plaintiff's earnings;

9. Award plaintiff the costs of bringing this action as well as such other and additional relief as the court may determine to be just and proper to prevent further abuses or harassment.

Dated this 4th day of May, 2017

MORENIKE BALOGUN
Plaintiff in Pro Per

---

13

# EXHIBIT "A"

 **PROVIDIAN**
*Financial*

### Account information at your fingertips!

*Good news!* Now you can get up-to-date account information every day, 24 hours a day, with just one call to our Ready Response unit at 1-800-356-0011.

The card to the right lists the account information available and everything you need to access it. *Please tear it out and keep it handy.*

 *We look forward to serving you!* 

---

### WELCOME TO READY RESPONSE!

*24 hours a day, 7 days a week*

Please have both your **Social Security** and your **Credit Card Account numbers** available when you call to receive information about your account, including:

- credit card balance/available credit
- last payment amount received
- next minimum payment amount and due date
- savings account balance

### FOR ACCOUNT INFORMATION...

CALL **1-800-356-0011**

*Tear out this card and keep it handy.*

AUTHORIZED USERS
SHOULD SIGN
THEIR CARD IMMEDIATELY
UPON RECEIPT.

---

WELCOME.  ENJOY YOUR VISA GOLD CARD.  PLEASE WRITE YOUR
NEW ACCOUNT NUMBER ON ALL PAYMENTS YOU SEND.




### ISSUED BY PROVIDIAN NATIONAL BANK

| CARDS ENCLOSED | | ACCOUNT NUMBER | CREDIT LIME |
|---|---|---|---|
| M17/ | 1 | 4361 4508 0049 5477 | $500 |

MORENIKE BALOGUN          001004
216 DOWN DR
DOVER DE  19904-9756

N3982-1233 0810 00000000  X   0A2

At Your Service...

READY RESPONSE



 

Tear out this card and keep it handy.

# PROVIDIAN NATIONAL BANK
## VISA® AND MASTERCARD®
### ACCOUNT AGREEMENT

| | |
|---|---|
| **ANNUAL PERCENTAGE RATE (APR)** for purchases and cash advances | 23.99% |
| Cash Advance Fee **FINANCE CHARGE** | 5% of the advance ($3 minimum) |
| Annual Fee | $59 |
| Late Fee | $29 |
| Overlimit Fee | $29 |
| Returned Payment Fee | $29 |

Your VISA or MasterCard credit account (the "Account") allows you to make purchases by using your VISA or MasterCard card (the "Card") wherever it is honored, and to get cash advances from any participating financial institution. In this Agreement, "you" and "your" mean each person for whom we have opened an Account. "We," "our," "ours," and "us" mean Providian National Bank or its assignee. Any use of this Account constitutes acceptance of this Agreement. The Account may be used only for personal, family, household, or charitable purposes, and not for any business or commercial purpose. You and we agree as follows:

**1. Promise to Pay.** You promise to pay us when due all amounts borrowed when you or someone else uses your Account (even if the amount charged exceeds your permission), all other transactions and charges to your Account, and collection costs we incur, including, but not limited to, reasonable attorney's fees and court costs. (If we sue you to collect the debt and you win the suit, we will pay your reasonable attorney's fees and court costs.)

**2. Payments.** We will send you a monthly statement showing your outstanding balance. You will pay us in U.S. dollars (checks must be payable at a U.S. office of the bank the check is drawn on) at least the payment due as shown on your statement by the payment due date in accordance

For Customer Service, to report lost or stolen Credit Cards, or if you have any questions, please call us toll-free:
1-800-356-0011

Providian National Bank, MEMBER FDIC

**PROVIDIAN**

© 2000 Providian Financial Corporation

11/00
R6113
F01-4829-0-1000

12

1

Cash Advance Balance, but not more than your available credit for purchases. We may also set a daily dollar limit on the cash advances you can receive at an Automated Teller Machine.

When we determine your available credit for a purchase or cash advance, we add to your balance any transactions that have been made or authorized but have not yet posted to your Account. If you send us a large payment check, or a check that we believe, based on your Account history, may be returned unpaid by your bank (a bounced·check), we may limit your available credit temporarily by the amount of the check while we wait to hear from your bank. You may not use your Account for, and we may refuse to honor, any transaction that would cause you to exceed your available credit.

7. Foreign Exchange/Currency Conversion. If you use your Card for transactions in a currency other than U.S. dollars, the transactions will be converted to U.S. dollars, generally using either a (i) government-mandated rate or (ii) wholesale market rate in effect the day before the transaction processing date, increased by one. percent (1%). If a credit is subsequently given for a transaction, it will be decreased by one percent (1%). If the credit has a different processing date, then the exchange rate of the credit can be greater/less than that of the original transaction. The currency conversion rate on the day before the transaction processing date may differ from the rate in effect at the time of the transaction or on the date the transaction is posted to your Account. You agree to accept the converted amount in U.S. dollars.

8. Merchant Relations. We will not be liable if any person or Automated Teller Machine refuses to honor the Card or fails to return the Card to you. We have no responsibility for goods and services purchased with the Card except as required by law. (See Special Rule below.)

9. The Card; Cancellation. You will return the Card to us at our request. The Card expires at the end of the month shown on it. We have the right not to renew the Card. At any time after at least 30 days notice to you, or without notice if permitted by law, we may cancel the Card and your credit privileges. If your Card is canceled or not renewed, finance charges and other fees will continue to be assessed, payments will continue to be due, and all other applicable provisions of this Agreement will remain in effect. You may cancel your credit privileges by notifying us in writing,·destroying the Card, and paying your entire statement balance by the date indicated on the statement that includes your final purchases, cash advances, charges, and fees. Your credit privileges will be canceled. You will still be responsible for paying· any accrued finance charges and additional charges.

10. Personal·Information; Documents. You will give us at least 10 days notice if you change your name, home or mailing address, telephone numbers, income, or job. You will promptly give us information about your financial affairs if we ask for it. We may get such information from others, including credit reporting agencies, and provide your address and information about your Account to others. We may also share information with our affiliates. However, you may write to us at any time instructing us not to share credit information with our affiliates. If you fail to fulfill any of your obligations under this Agreement, a negative credit report reflecting on your credit record may be submitted to credit reporting agencies.

11. Customer Service; Unauthorized Use, Loss, or Theft of the Card. Each Card must be signed on receipt. You will safeguard the Card and your Personal Identification Number (PIN), which provides access to Automated Teller Machines, from theft. You will keep your PIN separate from your Card. If you discover or suspect that the Card is lost or stolen, or that there may be an unauthorized transaction on your Account, you will notify us promptly by telephoning 1-800-356-0011. You will phone, even though you may notify us in writing, so we can act quickly to limit losses and liability. You are not liable for unauthorized use of your card occurring before you notify us. If you report or we suspect unauthorized use of your Account, we may suspend your

credit privileges until we resolve the problem to our satisfaction or issue you a new Card. To improve customer service and security, you agree that your calls may be monitored or recorded.

12. **Standard of Care.** Transactions in your Account will be processed mechanically without our necessarily reviewing every item. Our processing system will call our attention to certain items, which we will examine. We will examine all transactions when you report that your Card has been lost or stolen. We do not intend ordinarily to examine all items, and we will not be negligent if we do not do so. This rule establishes the standard of ordinary care that we in good faith will exercise in administering your Account. Because of our limited review, and because your Card transaction slips will not be returned to you with the monthly statement, you should be careful to keep a record of them. You should save your cash advance and purchase slips. You agree to check your monthly statements against your record and to notify us promptly of any unauthorized transactions or errors.

13. **Default.** You will be in default: if you were not eligible for the Account at the time it was opened; if you fail to pay any amount due to us or to any other creditor; if you fail to comply with any part of this Agreement; if any information you gave us proves to be incomplete or false; upon your death, bankruptcy, or insolvency; if a bankruptcy petition is filed by or against you; or if we believe in good faith that you may not pay or perform your obligations under this Agreement. On your default, we may, without further demand or notice, cancel your credit privileges, declare your Account balance immediately due and payable, and invoke any remedy we may have. In the event of your default, the outstanding balance on your Account shall continue to accrue interest at the Annual Percentage Rate(s) disclosed in the Finance Charges section of this Agreement, even if we have sued you to collect the amount you owe.

14. **Waiver of Certain Rights.** We may delay or waive enforcement of any provision of this Agreement without

8

You may use our PaySmart℠ service to make a single payment by phone from your personal checking account to your Account free of charge, as a courtesy, once during every calendar year. After that, we may charge your Account a fee of $4.95 for each additional use of the service during that year. This fee is a FINANCE CHARGE and will apply even if the payment is returned for non-sufficient funds.

Your Account will be reviewed regularly for unsecured credit line increases. If we offer you a credit line increase, we will tell you if there is a fee. The maximum amount of this fee was disclosed to you when you applied for your Account and will in no case exceed $99. A credit line increase fee is a FINANCE CHARGE.

(You may have paid a one-time processing fee in order to open the Account. If so, this fee was a FINANCE CHARGE and the amount was disclosed in the Credit Card Terms we sent you in your solicitation.)

6. **Credit Line.** Your initial total credit line and your initial cash advance credit line are disclosed on the cardmailer that comes with your Card. Your cash advance credit line is a limited portion of your total credit line. We may increase or lower your total credit line and/or your cash advance credit line at any time based on information we obtain from you or your credit records, or based on your use of the Account. For example, if your use of the Account indicates you are having financial difficulties or may not repay us, we may lower your credit line. On the other hand, if you use your Account responsibly and maintain a good credit record, we may increase your credit line. Your current total credit line and your current cash advance credit line are disclosed in your statement each month.

Your monthly statement will also show, as of the statement date, your available credit for purchases and your available credit for cash advances. On any day, your available credit for purchases is normally the difference between your total credit line and your total Account balance. On any day, your available credit for cash advances is normally the difference between your cash advance credit line and your

5

### Your Billing Rights—
### Keep This Notice for Future Use

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify Us in Case of Errors or
### Questions About Your Bill

If you think your bill is wrong, or if you need more information about an entry on your bill, write us, on a separate sheet, at our address for billing disputes listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following:

—Your name and Account number.

—The dollar amount of the suspected error.

—A description of the error and an explanation, if possible, of why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### Your Rights and Our Responsibilities After
### We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges. We can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

10

not be included in the Purchase Balance for the purpose of calculating finance charges for the billing cycle when fees are the only balance on the last day of the billing cycle. Cash advance fees are included in the Cash Advance Balance as of the date posted. Cash advances from other financial institutions and through Automated Teller Machines are included in your Cash Advance Balance as of the date made. If we send you a cash advance check and you use it, it will be included in your Cash Advance Balance as of the date presented to us. Other debits are included in your Purchase or Cash Advance Balance as of the date posted. Finance charges are added to your Purchase and Cash Advance Balances each day and are then posted on the last day of the billing cycle.

To figure the daily finance charge for purchases and the daily finance charge for cash advances, we start with your previous day's Purchase Balance and Cash Advance Balance, add all debits and subtract all credits for the current day to the applicable balance (as explained in the paragraph above), and multiply the net amount by the applicable daily periodic rate. The daily periodic rate for purchases and cash advances is 0.0657% (corresponding to an ANNUAL PERCENTAGE RATE of 23.99%). The finance charge for purchases is then added to and included in that day's Purchase Balance and the finance charge for cash advances is then added to and included in that day's Cash Advance Balance. We treat a credit balance for any day as zero. We determine the total finance charges for the billing cycle by adding together the finance charge for purchases for each day within the billing cycle and the finance charge for cash advances for each day within the billing cycle. In calculating finance charges, an adjustment will be made for any transaction or payment that would have affected the finance charge calculation in a prior billing cycle had it been posted in that cycle. The applicable daily periodic rate for such a transaction will be the rate in effect for the current billing cycle rather than the rate in effect on the date of the transaction. There is no period within which credit extended may be repaid without incurring a finance charge.

To determine the average daily balance shown on your statement for purchases, add each day's Purchase Balance (including daily finance charge) in the billing cycle and divide by the number of days in the billing cycle. To determine the average daily balance shown on your statement for cash advances, add each day's Cash Advance Balance (including daily finance charge) in the billing cycle and divide by the number of days in the billing cycle. You can multiply each of these average daily balances by the number of days in the billing cycle and by the applicable daily periodic rate to obtain subtotals, and then add the two subtotals together to determine the total amount of your finance charges on balances for the billing cycle. If a cash advance transaction fee (see Fees, section 5) or credit line increase fee is charged, that amount is also a FINANCE CHARGE.

**4. Changes.** We may change any part of this Agreement or add or remove requirements, terms, or conditions after notice as required by law. If we change section 3, the new finance charge calculation will apply to your whole Account balance from the effective date of the change, whether or not the balance includes items posted to your Account before the change date and whether or not you continue to use the Account.

**5. Fees.** We may charge your Account $29 for: each billing cycle within which your Account is delinquent (late fee); each billing cycle within which your balance exceeds your credit line (overlimit fee); and each payment item that is returned to us unpaid (for example, bounced checks).

An annual fee of $59 will be charged to your Account every 12 months. For a second Card issued on your Account, an additional $20 annual fee will be charged for that Card. For cash advances, a transaction fee, which is a FINANCE CHARGE, will be charged that is the greater of $3 or 5% of the cash advance amount. For Cards sent at your request through an express service, we may charge $22, which is a FINANCE CHARGE. For each Card you ask us to replace, we may charge $18. For copies of back statements that were first sent to you more than three months earlier, we may charge $3 for each copy.

losing our right to enforce it or any other provision later. You waive: the right to presentment, demand, protest, or notice of dishonor; any applicable statute of limitations; and any right you may have to require us to proceed against anyone before we sue you.

**15. Applicable Law; Severability; Assignment.** No matter where you live, this Agreement and your Account are governed by federal law and by New Hampshire law. This Agreement is a final expression of the agreement between you and us and may not be contradicted by evidence of any alleged oral agreement. At any time after we determine in good faith that any proposed or enacted legislation, regulatory action, or judicial decision has rendered or may render any material provision of this Agreement invalid or unenforceable, or impose any increased tax, reporting requirement, or other burden in connection with any such provision or its enforcement, we may, after at least 30 days notice to you, or without notice if permitted by law, cancel the Card and your credit privileges and declare your Account balance immediately due and payable. If any provision of this Agreement is held to be invalid or unenforceable, you and we will consider that provision modified to conform to applicable law, and the rest of the provisions in the Agreement will still be enforceable, but we will have the right to cancel your Account and declare your balance immediately due, as provided in the preceding sentence. We may transfer or assign our right to all or some of your payments. If state law requires that you receive notice of such an event to protect the purchaser or assignee, we may give you such notice by filing a financing statement with the state's Secretary of State.

**16. Notices.** Other notices to you shall be effective when deposited in the mail addressed to you at the address shown in our records, unless a longer notice period is specified in this Agreement or by law, which period shall start upon mailing. Notice to us shall be mailed to our address for Customer Service on your statement (or other addresses we may specify) and shall be effective when we receive it.

with payment instructions on your monthly statement. The payment due will be: 3% of the new balance shown on your statement, plus the amount of any past due payment, and may include the amount by which the new balance exceeds your credit line, plus fees for certain optional services. However, the payment due will not be less than $15 (unless your new balance is less than $15, in which case the payment due will be the amount of the new balance). If your Account is past due or above the credit line, we may require a higher minimum payment, but we will notify you before doing so. If your payment is more than the payment due, it will be treated as a single payment and none of it will be applied to future payments due.

When we receive your payment check, we may, at our discretion, keep the check and present it <u>electronically</u> to the financial institution on which the check is drawn. If we do so, we will provide you with a copy of the check at your request.

We may accept late or partial payments, or payments marked "paid in full" or marked with other restrictions, without losing our right to collect all amounts owing under this Agreement.

3. Finance Charges. Finance charges begin to accrue on a debit when it is included in either the daily purchase balance ("Purchase Balance") or the daily cash advance balance ("Cash Advance Balance") and continue to accrue until that balance is reduced by a payment or credit. The Purchase and Cash Advance Balances are reduced by payments as of the date received, and by credits as of the date posted. Normally, any payment amount we receive that exceeds the finance charges and fees then due will first be used to pay the remaining Cash Advance Balance, and then, after the Cash Advance Balance has been paid in full, will be used to pay any remaining Purchase Balance. However, we may apply your payments differently without further notice. Purchases are included in your Purchase Balance as of the date made. Fees (except cash advance fees) are included in the Purchase Balance as of the date posted. However, fees will

If we find that we made a mistake on your bill, you will not have to pay any finance charge related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up the missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you question your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### Special Rule for Credit Card Purchases

If you have a problem with the quality of the goods or services that you purchased with our credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. There are two limitations on this right: (a) you must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) the purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

# EXHIBIT "B"



NEW HAMPSHIRE
JUDICIAL BRANCH

Home | Supreme Court | Superior Court | Circuit Court | Drug and Mental Health Courts | Mediation & Arbitration | Law Library | Electronic Services

**Resources**

Search...          Go

Court Rules

Judicial Performance
Evaluations

Administrative Office of the
Courts

**Committees**

Judicial Conduct Committee

Advisory Committee on Rules

Attorney Discipline System
NH Bar Admissions

Access to Justice Commission

Pursuant to RSA 336:1, the State Treasurer has notified the Administrative Office of the Courts of the annual simple rates of interest on judgments and prejudgments, rounded to the nearest tenth per statute, for the following calendar years.

| | |
|---|---|
| 2017 | 2.4% |
| 2016 | 2.1% |
| 2015 | 2.0% |
| 2014 | 2.1% |
| 2013 | 2.1% |
| 2012 | 2.0% |
| 2011 | 2.2% |
| 2010 | 2.2% |
| 2009 | 3.5% |
| 2008 | 6.0% |
| 2007 | 6.8% |
| 2006 | 5.7% |
| 2005 | 4.0% |
| 2004 | 3.0% |
| 2003 | 3.6% |
| 2002 | 4.4% |
| 2001 | 7.9% |
| 2000 | 7.0% |
| 1999 | 6.5% |
| 1998 | 7.3% |
| 1997 | 7.6% |
| 1996 | 7.2% |

**August 16, 1981 to December 31, 1995**

During this time the interest rate was fixed by statute at 10%.

EXHIBIT "C"

```
05-01-0043                          COURT OF COMMON PLEAS CASE - FILED
FILED  January 11,2005
JUDGE:
STATUS:  AJDM  E-FILED:
```

DOUGHTY STEPHEN P.        FIRST RESOLUTION INVESTMENT        OCJ-07-065
                         CORPORATION                        M-3-084
                              -- VS --

                         MORENIKE BALOGUN

01/11/2005     INITIAL COMPLAINT & PRAECIPE FILED

01/11/2005     (        ) SUMMONS ISSUED FOR SERVICE BY
               SCOTT TAYLOR    UPON MORENIKE BALOGUN

02/03/2005     SERVICE MADE AS TO MORENIKE BALOGUN
               BY LEAVING (        ) SUMMONS WITH DEFENDANT'S
               SISTER ON 1/30/05

03/18/2005     03/18/2005 PLAINTIFF(S) ATTORNEY FILED AN
               AFFIDAVIT/MOTION FOR ENTRY OF DEFAULT JUDGMENT IN
               FAVOR OF PLAINTIFF(S) FOR WANT OF AN ANSWER BY
               DEFENDANT(S) MORENIIKE BALOGUN
               DEFAULT JUDGMENT IS ENTERED AS FOLLOWS:
               $3,839.27  PRINCIPAL
               $2,793.54  INTEREST @ 27.990% FROM 7/29/02 TO 3/4/05
               $767.85    ATTORNEY FEES
               $7,400.66  TOTAL PLUS COURT COSTS
               27.990%              POST JUDGMENT INTEREST

03/18/2005     ATTORNEY FOR JUDGMENT CREDITOR FILED A REQUEST
               TO TRANSFER JUDGMENT TO THE SUPERIOR COURT

01/31/2006     NOTICE AND MOTION TO OPEN/VACATE DEFAULT JUDGMENT FILED
               AND NOTICED FOR WEDNESDAY, MARCH 8TH, 2006 AT 9:15 AM.

06/14/2006     MOTION HEARING SCHEDULED                    jmt obtained in
               HEARING HELD CASE SETTLED FOR $7,000.00 PLUS COURT   amount of $7,000
               COSTS.  SO ORDERED THIS 14TH DAY OF JUNE A.D. 2006
               S/ MERRILL C. TRADER JUDGE                  6-14-06 ←

07/14/2006     ATTORNEY FOR JUDGMENT CREDITOR FILED A REQUEST
               TO TRANSFER JUDGMENT TO THE SUPERIOR COURT

                    CERTIFIED
                    AS A TRUE COPY 7-18-06
                    ATTEST
                    COURT OF COMMON PLEAS

                    Margaret Margarete-Orlando


          CERTIFIED
          AS A TRUE COPY
          ATTEST: ANNETTE D. ___ PROTHONOTARY

          BY: _____

          DATE: 4-16-____

EXHIBIT "D"

Casey M. Jensen (SBN 263593)
WINN LAW GROUP, A PROFESSIONAL CORPORATION
110 E. WILSHIRE AVE. STE. 212 FULLERTON CA 92832
TELEPHONE NO.:714-446-6686
File No. 12-23972-0-SSJ-BDA-436145080049 6477
(XX) ATTORNEY FOR (Name): PLAINTIFF

~~ 26 2013

| | | |
|---|---|---|
| NAME OF COURT: SUPERIOR COURT OF CALIFORNIA<br>STREET ADDRESS: 111 NO. HILL ST., RM. 102<br>MAILING ADDRESS: 111 NO. HILL ST., RM. 102<br>CITY AND ZIP CODE: LOS ANGELES CA 90012<br>BRANCH NAME: LOS ANGELES DISTRICT, LIMITED CIVIL | | |
| PLAINTIFF: FIRST RESOLUTION INVESTMENT CORP.<br><br>DEFENDANT: MORENIKE BALOGUN, et al. | | |
| **APPLICATION FOR ENTRY OF JUDGMENT ON SISTER-STATE JUDGMENT**<br>[ ] AND ISSUANCE OF WRIT OF EXECUTION OR OTHER ENFORCEMENT<br>[ ] AND ORDER FOR ISSUANCE OF WRIT OR OTHER ENFORCEMENT | CASE NUMBER:<br><br>13K13055 |

Judgment creditor applies for entry of a judgment based upon a sister-state judgment as follows:

1. Judgment creditor *(name and address):* FIRST RESOLUTION INVESTMENT CORPORATION, POB 34000 Seattle WA 98124-1000

2. a. Judgment debtor *(name):* MORENIKE BALOGUN
   b. [ X ] An individual (last known residence address): 10746 Francis Pl Apt 111  Los Angeles CA 90034-6231

   c. [ ] A corporation of (specify place of incorporation):
      (1) [ ] Foreign corporation
         [ ] qualified to do business in California
         [ ] not qualified to do business in California

   d. [ ] A partnership (specify principal place of business):

      (1) [ ] Foreign corporation
         [ ] qualified to do business in California
         [ ] not qualified to do business in California

3. a. Sister state *(name):* DELAWARE
   b. Sister-state court *(name and location):* KENT COUNTY COURTHOUSE 414 Federal Street, Dover, DE 19901
   c. Judgment entered in sister state on *(date):* June 26, 2006

4. **An authenticated copy of the sister-state judgment is attached to this application.** Include accrued interest on the sister-state judgment in the California judgment (Item 5c).
   a. Annual interest rate allowed by sister state (specify):27.99%

   b. Law of sister state establishing interest rate (specify): DEL. CODE ANN. TIT. 6 SECTION 2301/ contract rate

5.    a. Amount remaining unpaid on sister-state judgment: . . . . . . . . . . . . . . . . . . $    7,000.00
      b. Amount of filing fee for the application . . . . . . . . . . . . . . . . . . . . . $      370.00
      c. Accrued interest on sister-state judgment . . . . . . . . . . . . . . . . . . . . . $   14,139.21
      d. Amount of judgment to be entered (total of 5a, b and c):. . . . . . . . . . . . . . $   21,509.21

*(Continued on reverse)*

Form Approved by the
Judicial Council of California
EJ-105 [Rev. July 1, 1983]
Optional Form

**APPLICATION FOR AND ENTRY OF JUDGMENT ON
SISTER-STATE JUDGMENT**

CCP 1710.15, 1710.20
Page 1 of 2

6. [   ] Judgment creditor also applies for issuance of a writ of execution or enforcement by other means before service of notice of entry of judgment as follows:

    a. [   ] Under CCP 1710.45(b).

b. [   ] A court order is requested under CCP 1710.45(c). Facts showing that great or irreparable injury will result to judgment creditor if issuance of the writ or enforcement by other means is delayed are set forth as follows:

[   ] continued in attachment 6b.

7. An action in this state on the sister-state judgment is not barred by the statute of limitations.

8. I am informed and believe that no stay of enforcement of the sister-state judgment is now in effect in the sister state.

9. No action is pending and no judgment has previously been entered in any proceeding California based upon the sister-state judgment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct except as to those matters which are stated to be upon information and belief, and as to those matters I believe them to be true.

Date: September 10, 2013

[ ] Brian N. Winn    [ ] Laura M. Hoalst
[ ] John E. Gordon   [ ] Stephen S. Zeller
[ ] Casey M. Jensen
_____
            (TYPE OR PRINT NAME)

►  _____
      (SIGNATURE OF JUDGMENT CREDITOR OR ATTORNEY)

Form Approved by the
Judicial Council of California
EJ-105 [Rev. July 1, 1983]
Optional Form

**APPLICATION FOR AND ENTRY OF JUDGMENT ON
SISTER-STATE JUDGMENT**

CCP 1710.15, 1710.20
Page 2 of 2

# EXHIBIT "E"

Number of pages including cover sheet: ___

Attention: __Esteban__                      Date: __6 - 16 - 14__

Company: _____               From: __Morenike Balogun__

Phone: __714-442-6686 Ex 381__         Company: _____

FAX: _____                         Phone: ████ - ████ - ████

Comments: __Please   see   attached__

_____

_____



Email: servicescenter0608@officemax.com
City: Los Angeles     State: CA   Zip: 90034
Phone: 310-836-5244
FAX: 310-836-5025

Case#:13K13055
File #:12-239-72

Dear Esteban:

I would like to reiterate that I dispute this debt. I believe there is a case against the amount claimed as well as the interest rate represented, but for my peace of mind, would like to resolve this matter and have it go away.

Per our conversation earlier today, I have been unemployed for a number of months now and am in really dire financial straights. Please find attached my most recent weekly Unemployment insurance claim form.

As you can see, I am struggling to make due every week and I am behind on all my bills. I am hoping that you and your associates will agree to settle this matter for five hundred dollars and resolve this once and for all.

If that is not acceptable then I will have to fight this in court because as I stated previously, I completely dispute this debt especially the amount claimed. I sincerely hope we can resolve this matter.

Sincerely,


Morenike Balogun

FEDERAL INCOME TAX WITHHOLDING AT 10% OF YOUR PAYABLE AMOUNT. INDICATE YOUR CHOICE ON EACH CLAIM FORM YOU SUBMIT.

ALLOW 10 DAYS FOR DELIVERY OF CHECK.     DETACH THIS STUB FOR YOUR RECORD

**CONTINUED CLAIM**     A A

M BALOGUN     03-30-14

ANSWER ALL QUESTIONS. SEE SECTION A ON BACK FOR EXAMPLES OF HOW TO COMPLETE YOUR ANSWERS. Each question is explained in your booklet, _A Guide to Benefits and Employment Services._

| | | 1ST WEEK | | 2ND WEEK |
|---|---|---|---|---|
| | Begins | 05-25-14 | Begins | 06-01-14 |
| | Ends | 05-31-14 | Ends | 06-07-14 |
| | YES | NO | YES | NO |

COMPLETE AND MAIL THIS FORM ON     06-08-14

1. Were you too sick or injured to work? ........................ > ☐ ☐   ☐ ☐

   If yes, enter the number of days (1 through 7) you were unable to work. ........ >   (1 - 7)   (1 - 7)

2. Was there any reason (other than sickness or injury) that you could not have accepted full-time work each workday? .................... > ☐ ☐ ☐ ☐

3. Did you look for work? ......................................... > ☐ ☐ ☐ ☐
   ☐ <— IF MARKED "X", YOU MUST COMPLETE SEC. B - WORK-SEARCH RECORD ON REVERSE.

4. Did you refuse any work? ...................................... > ☐ ☐ ☐ ☐

5. Did you begin attending any kind of school or training? ......... > ☐ ☐ ☐ ☐

6. Did you work or earn any money, WHETHER YOU WERE PAID OR NOT? ...... > ☐ ☐ ☐ ☐
   (If yes, you MUST COMPLETE items a. and b. below.)
   a. Enter earnings before deductions here. ................ > $ | | | | |     $ | | | | |
   b. Report employment or 'source' of earnings information below:

| DATE LAST WORKED | TOTAL HOURS WORKED | EMPLOYER NAME AND MAILING ADDRESS - INCLUDE ZIP CODE | REASON NO LONGER WORKING (OR WRITE "STILL WORKING") |
|---|---|---|---|
| **1ST WEEK** | | | |
| **2ND WEEK** | | | |

7. If you want federal income tax withheld for the week(s) shown above, mark this block. ................................................. > ☐

8. If you had a change of mailing address or phone number, mark this block and complete Sec. D on reverse. ..................... > ☐



NORCAL AUTHORIZATION CENTER
PO BOX 989057
WEST SACRAMENTO CA  95798-9057

I understand the questions on this form. I know the law provides penalties if I make false statement or withhold facts to receive benefits; my answers are true and correct. I declare under penalty of perjury that I am a U.S. citizen or national or an alien in satisfactory immigration status and permitted to work by USCIS. I signed this form after the latest date for which I am claiming benefits.

X _____
(your signature is required)

DE 4581CTO Rev. 6 (5-04)  CU/PA869

**DETACH AND DISCARD**

SOCAL AUTHORIZATION CENTER
PO BOX 19007
SAN BERNARDINO CA  92423-9007

EDD Serving the People of California

M I BALOGUN
10746 FRANCIS PL APT 313
LOS ANGELES CA  90034-7722

BRIAN N. WINN

LAURA McCARTHY HOALST
JOHN E. GORDON
STEPHEN S. ZELLER
CASEY M. JENSEN

A PROFESSIONAL CORPORATION

THE CHAPMAN BUILDING
110 E. WILSHIRE AVE, SUITE 212
FULLERTON, CA 92832-1109

TELEPHONE: (714) 446-6686
Toll Free Telephone: 866-494-6674
FAX: (714) 446-6680

E-MAIL: CustServ@winnlawgroup.com

June 20, 2014

Morenike Balogun
10746 Francis Pl., Apt 313
Los Angeles, CA 90034-7722

RE:   Creditor:                          FIRST RESOLUTION INVESTMENT CORP.
      Creditor Account Number:           XXXXXXXXXXXX5477
      Name of Debtor:                    MORENIKE BALOGUN

Dear Ms. Balogun:

Pursuant to your request, and the Federal Fair Debt Collection Practices Act, we requested verification of your debt from the creditor.

Enclosed herewith is a copy of the sister-state judgment and judgment which verifies the debt.  Based upon that, it is now our intention to continue with collection activity.

If you have any questions regarding your rights or liabilities, please consult an attorney.

Sincerely,

Winn Law Group, APC.,

Brian N. Winn
Laura M. Hoalst
John E. Gordon
Stephen S. Zeller
Casey M. Jensen
Attorney for Plaintiff

**THIS LAW FIRM IS A DEBT COLLECTOR, AS DEFINED BY 15 U.S.C. §1692(a)(6), AND THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED BY US WILL BE USED FOR THAT PURPOSE.**

BNW: TS
Copy: Heather Ritchie
File No. 12-23972-0-VSD

Forwarder Account No.:XXXXXXXXXXXX5477

EXHIBIT "F"



NOTICE OF INCOME WITHHOLDING ORDER

**MORENIKE I.BALOGUN**
**225 35TH PLACE APT. B**
**MANHATTAN BEACH     CA 90266**

To Addressee:

Please be advised that our company has received **either** a 'Wage Assignment Order', 'Income Withholding Order', Lien or Levy, Garnishment Summons or similar Income Deduction Order against your wages. Enclosed are copies of the document(s) pertaining to the Garnishment Order or Lien.

In compliance with the Garnishment Order or Lien, income deductions will commence immediately, effective next pay period accordingly.

If you wish to rectify the situation pertaining to your case, please contact the issuing agency and/or creditor listed on the enclosed document(s) initiating the income deduction.

Any change of circumstance, modification, release, termination, and/or vacate order/letter originating from the court, issuing agency or creditor should be sent to our office, ATTN: GARNISHMENTS, via one of the listed method below for your convenience:

| | |
|---|---|
| Address: | 2300 EMPIRE AVE 5TH FL |
| | BURBANK, CA 91504-3350 |
| Fax: | (818) 937 1921 |
| Electronically: | garnishment_inquiries@castandcrew.com |

Thank you for your prompt attention in this matter.

| Attorney or Party without Attorney:<br>WINN LAW GROUP, APC<br><br>110 E. WILSHIRE AVE., #212<br>FULLERTON, CA 92832<br>TEL: (714)446-6686 | Levying Officer:<br>Sheriff's Department<br>Los Angeles County<br>Sheriff's Office<br>300 E. OLIVE, ROOM 104<br>BURBANK<br>CA  91502<br>TEL:  (818)557-3490 |

| L.A SUPERIOR COURT STANLEY MOSK  19100<br>CENTRAL DISTRICT | Court Case: 13K13055<br>Levy.Ofcr.File.No: 3221612010165 |

Plaintiff: FIRST RESOLUTION INVESTM  Defendant: BALOGUN, MORENIKE

### EARNINGS WITHHOLDING ORDER (WAGE GARNISHMENT)

Employee: Keep your copy of this legal paper.
Empleado: Guarde este papel oficial.

Employer: Enter the following date to assist your record keeping.
Date this order was received by employer (specify the date of personal delivery by
levying officer or the date mail receipt was signed).

TO THE EMPLOYER REGARDING YOUR EMPLOYEE:
Name and address of employer          Name and address of employee
CAST & CREW PRODUCTION SERVICES,      BALOGUN, MORENIKE
LLC ATTN:PERSONNEL/PAYROLL
2300 EMPIRE AVE 5TH FL                10746 FRANCIS PL APT 313
BURBANK, CA 91504                     LOS ANGELES, CA 90034-7722
                                               SS#XXX-XX-0953

1. A judgment creditor has obtained this order to collect a court judgment against your
employee.  You are directed to withhold part of the earnings of the employee (see
instructions on attached form). Pay the withheld sums to the LEVYING OFFICER:
              LOS ANGELES COUNTY SHERIFF DEPARTMENT
              PO Box 843580  Los Angeles, CA 90084-3580
      Include Levying Officer File No: 3221612010165 on payments.
If the employee works for you now, you must GIVE THE EMPLOYEE A COPY OF THIS ORDER
AND THE EMPLOYEE INSTRUCTIONS within 10 days after receiving this order.
COMPLETE ALL COPIES OF THE FORM EMPLOYER'S RETURN AND MAIL THEM TO THE LEVYING OFFICER
within 15 days after receiving this order, whether or not the employee works for you.

2. THE TOTAL AMOUNT DUE IS $ 28325.31     PLUS $ 5.90     INTEREST PER DAY.

   Count 10 calendar days from the date when you received this order.  If your employee's
   pay period ends before the tenth day, DO NOT withhold earnings for that pay period.
   Do withhold from earnings that are payable for any pay period ending on or after that
   tenth day.  Continue withholding for all pay periods until you withhold the amount due.
   The levying officer will notify you of an assessment you should withhold in addition to
   the amount due.  Do not withhold more than the total of these amounts.  Never withhold
   any earnings payable before the beginning of the earnings withholding period.
   PLEASE CALL LEVYING OFFICER PRIOR TO MAKING FINAL PAYMENT.

3. The judgment was entered in the court on: 09/26/13
   The judgment creditor (if different from the plaintiff) is:

4. The INSTRUCTIONS TO EMPLOYER on the reverse tell you how much of the employee's
   earnings to withhold each payday and answer other questions you may have.
                                          Jim McDonnell, SHERIFF

   Date: 12/01/16
              Levying officer, by: _____
                                          H. JEN, Deputy
              EARNINGS WITHHOLDING ORDER (WAGE GARNISHMENT)
Form adopted by the Judicial Council of California    CCP706.022, 706.108, 706.125
WG-002 (Rev. July 1, 2016)

# EXHIBIT "G"

 An official website of the United States Government

 Consumer Financial
Protection Bureau

■ Submit a Complaint

 All complaints (.)

# 170401-000017

**CLOSED**

## ✓ Submitted

**STATUS**
Submitted to the CFPB on 2017-04-01

**PRODUCT**
Credit card

**ISSUE**
Attempted to collect wrong amount

### We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

Dollar amount in dispute $28,325.31 plus interest of $5.90 per day The resolution I am seeking is a vacationr of a time barred debt collection law suit from a junk debt collector. The state of California like all states have laws placing time limits on debt collection for this very reason. I believe my case is the exact type of case that the Rosenthall Fair debt collection act as well as California's own debt collection laws seeks to protect against.

Fourteen years ago as a struggling college student in New Hampshire, I ended up defaulting on a credit card which I obtained in New Hampshire, paid in New Hampshire and the contract was in fact covered by New Hampshire law. (The debt collection company First Resolution Management and Winn Law Group) are well aware and have always been aware of this fact. Despite that, while I was living in California (I have been a California resident since 2004), in 2005 First Resolution LLC sought a default judgement against me in the state of Delaware (not in CA where I lived or in NH). They won that default judgment in 2005 for about 3,700(the original debt was close to 2500). I disputed this judgement, the amount of the judgment as well as the post judgment interest rate placed on the debt which was a state of Delaware mandated 27.99%. Furthermore First Resolution and Winn Law Group, then waited over ten years (by which time I have worked hard in my career, battling two bouts of long term unemployment, the last of which ended just last year). Finally getting back on my feet after being unemployed for 18 months and am finally making some headway in my life. And now, First Resolution and Winn Law group seeks to collect 28.000 dollars on a debt that was originally about 2,500 dollars and still assessing a Delaware interest rate even though the original credit card contract clearly states that New Hampshire law applies. And additionally, California law strictly prohibits collection after so long a term for this exact reason. If debt collectors are not incentivized to collect within a reasonable amount of time in an appropriate jurisdiction, these types of abuses will occur. Winn law group first sought to collect this debt in 2015 when I was unemployed. I reached out to them and disputed the amount of the debt and also showed them evidence of my unemployment. While I was unemployed, Winn Law group contracted with Esser James collections in New York to call my parents, my siblings, my friends and even my employers in an attempt to harrass me into borrowing or coming up with the money. (I was unemployed for 18 months) I am seeking immediate relief and a vacation of this time barred and misrepresented debt and must get a letter to my employer before my wages are garnished. Again the default judgement was issued in 2005 for $3,700(which included attorneys fees) in the state of Delaware. The contract is New Hampshire law. The case from Winn Law group seeking garnishment of over $28,000 now in 2017(12 years later) is number:13K13055. The Levy Officer file # is: 3221612010165 And the original case is at the L.A. Superior Court Stanley Most 19100 Central district Again, I believe I have a valid claim for the following reasons, all of which are supported by Both California Law against bad debt collectors as well as the Rosenthall Fair Debt Collections Practices Act. 1. The debt is time barred 2. Misrepresenting the amount of the debt 3. The original credit card contract clearly states that New Hampshire Law shall apply to the contract and not Delaware law(which was more favorable to first resolution) as such, the state in which I was sued, the amount I was sued for, the post judgment interest rate applied, as well as the statute of limitations (both for judgment and removal) has long expired. Business Information (Complaint Against): Your Comments Thank you for your time and attention to this matter.

View full complaint

✅ **Sent to company**

**STATUS**

Sent to company on 2017-04-01

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

You should receive an update from the company within the next 15 days, and a final response within 60 days.

✅ **Company responded**

**STATUS**

Company responded Closed with explanation on 2017-04-14

**RESPONSE TYPE**

Closed with explanation

### Company's response

Thank you for giving Winn Law Group, APC the opportunity to respond to this complaint. Our office represents the Creditor, First Resolution Investment Corporation. In the complaint, Ms. Balogun alleges the following: "1. The debt is time barred 2. Misrepresenting the amount of the debt 3. The original credit card contract clearly states that New Hampshire Law shall apply to the contract and not Delaware law(which was more favorable to first resolution) as such, the state in which I was sued, the amount I was sued for, the post judgment interest rate applied, as well as the statute of limitations (both for judgment and removal) has long expired." Ms. Balogun requests the follow resolution: that our client be barred from collecting on the judgment that was entered. Based on the consumer's complaint our client has authorized our office to work with the customer to come to a mutual resolution on the account. If Ms. Balogun would like to discuss her account, she may contact our firm and the attorney handling the account, Stephen Zeller,

Esq., at 714-446-6686 x207 to discuss a mutual resolution. Winn Law Group, APC has investigated Ms. Balogun's allegations and responds as follows: First Resolution Investment Corporation obtained a judgment against Ms. Balogun in the state of Delaware on June 26, 2006 in the amount of $7,000 with interest continuing to accrue at the rate of 27.99% per annum. The Delaware lawsuit was filed on January 11, 2005. According to our client's record, they had reason to believe that Ms. Balogun resided or received mail in Delaware when the suit was filed. The file was placed in our office and a initial communication letter was mailed to the Defendant's residence on May 2, 2013. Thereafter, our office proceeded with exemplifying the Delaware state judgment. On or about September 10, 2013 Plaintiff's counsel filed and served a application for entry of judgment on sister-state judgment. The sister-state judgment was granted by the Court September 26, 2013 and a copy of the judgment was served on Ms. Balgun on June 12, 2014. The judgment amount entered by the California court was for $21,509.21, with interest continuing to accrue at 10% per annum on the judgment balance from the date that the judgment was entered. On or about June 16, 2014 Ms. Balogun contacted our office by fax, disputed the balance, provided financial hardship information, and made an offer to settle the debt. On or about June 20, 2014 our office responded to Ms. Balogun's dispute of the balance by verifying the debt with a copy of both the Delaware state judgment and California judgment. After verifying the debt, our office did not have any further contact with the consumer. Under California law, a money judgment is collectable for a ten year period from the date the judgment is entered, but can be renewed for another ten year period if the renewal is applied for within the judgment's ten year period. Our office has reviewed the file in whole, and have not identified any harassing or similar behavior as alleged in Ms. Balogun's complaint.

---

Privacy Act Statement

OMB #3170-0011

Have a question? ¿Preguntas?

(855) 411-2372

 An official website of the United States Government

EXHIBIT "H"

# DECLARATION OF STEPHEN S. ZELLER

I, the undersigned, declare as follows:

1. I am an attorney at law duly admitted to practice before all courts of the State of California. I have first hand personal knowledge of the things declared herein and if called to testify I could and Would competently testify thereto.

2. I am associated with the Winn Law Group, A P.C. the attorneys for the Plaintiff in this matter. I am currently the attorney responsible for the litigation of the above captioned file. In preparation for making this motion and declaration, I reviewed the file that is kept in the ordinary course of business of the Winn Law Group A P.C. for the above captioned matter. The electronically stored notes related to this file were made or transmitted by the person with knowledge at or near the time of the incident recorded; and these records are kept in the course of regularly conducted business.

3. My review of the file shows that Plaintiff obtained a judgment against the Defendant in Delaware state court on June 26, 2006. (*See* Exhibit A, attached hereto is a true and correct copy of Plaintiff's Delaware state judgment).

4. My review of the file indicates that on or about September 10, 2013 Plaintiff's counsel filed an application for sister-state judgment. (*See* Exhibit B, attached hereto is a true and correct copy of Plaintiff's application for sister-state judgment).

5. My review of the file indicates that on or about September 26, 2013 the Court entered judgment based on Plaintiff's request. (*See* Exhibit C, attached hereto is a true and correct copy of Plaintiff's California judgment).

6. My review of the file indicates that the Defendant was personally served with the notice of entry of a sister state judgment on or about June 12, 2014. (*See* Exhibit D, attached hereto is a true and correct copy of Plaintiff's proof of service).

7. My review of the file indicates that the Defendant faxed a dispute letter to Plaintiff's counsel on or about June 16, 2014, which referenced this case number. (*See* Exhibit E, attached hereto is a true and correct copy of Defendant's dispute letter).

2014, by providing the Defendant with copies of the sister state judgment and California judgment. (*See* Exhibit F attached hereto is a true and correct copy of Plaintiff's verification packet).

7. Based on the foregoing, it is my information and belief that Defendant had knowledge of the pending lawsuit and was properly served with the notice of entry of sister state judgment, and her failure to act in conformity with filing requirements was due to her own failure and not by any representation of Plaintiff or its counsel.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Dated: April 17, 2017

Stephen S. Zeller
Declarant

**OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT**

# EXHIBIT "I"



## University of San Diego

Bookstore

## FACSIMILE COVER SHEET

DATE: _Wed Feb 9th 2005_

TO: _Bill Bradley (Attorney at law)_

FAX #: _302 655 9358_

FROM: _Morenike Balogun (302) 233 3076_
FAX#: (619) 260-4619

TOTAL # OF PAGES (INCLUDING COVER SHEET): ___19___

TO REPORT ERROR IN TRANSMISSION, PLEASE CALL (619) 260-4551

MESSAGE: _Dear Mr. Bradley_
_I was refered to you by someone in the NACA_
_network. I have enclosed the complaint/summons as well as the_
_letter I received from the law firm. As I stated in my message_
_My sister was served at my father's house in Dover. I have been living_
_in California where I intend to stay since August. In addition, after_
_consulting with an attorney out here, I am interested in filing a complaint_
_against them, the lawfirm, as a response to their misstatements of the law in_
_their letter. I can be reached at 302-283-3076 or by email at_
_mbalogun-07 @ sandiego.edu._
_Sincerely, Morenike Balogun_

5998 Alcalá Park, San Diego, California 92110-2492  619/260-4551  Fax: 619/260-4619

_P.S. I am hoping that by suing them on their violation they_
_will either have to pay me, a fine, or settle this debt._

# EXHIBIT "J"

**A FAIR ACCOUNTING OF ACTUAL AMOUNT OWED UNDER PROVIDIAN VISA CONTRACT**

Default amount of 3,829.27 in 2002

Interest at contract rate of 23.99% = $918.64 per year

2003  = 4,747.91

2004 = 5,666.55

2005 = 6,585.19 (Year Judgment entered)


New Hampshire post judgment interest of .04%  (6,585.19 x .04 = $263.40)

 ( $263.40) from 2005 to 2017 = $3,160.89


Actual Amount owed

3,160.89 (interest)  + 6,585.19 judgment amount = $9,746.08


Under the contract and by law my liability is no more than $9,746.08

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☑ )
Morenike Balogun

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
WINN LAW Group, APC

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   ORANGE
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☑ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multidistrict Litigation - Transfer

☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ 36,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 USC §1692 Rosenthall Fair Debt Collection Practices Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property |  | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. |  | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit |  | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other |  |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** |  |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act |  |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations |  |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act |  |
|  | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act |  |
| ☐ 950 Constitutionality of State Statutes |  |  | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation |  |
|  |  |  | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act |  |

**FOR OFFICE USE ONLY:**   Case Number: SACV17-00796

**CIVIL COVER SHEET**

CV-71 (07/16)

Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? ☐ Yes ☑ No | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| If "no," skip to Question B. If "yes," check the box to the right, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? ☐ Yes ☑ No | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?   *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)   *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? ☐ Yes ☑ No | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?   *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)   *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☑ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☑ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A? ☑ Yes ☐ No | D.2. Is there at least one answer in Column B? ☐ Yes ☐ No |
|---|---|
| If "yes," your case will initially be assigned to the **SOUTHERN DIVISION.** Enter "Southern" in response to Question E, below, and continue from there. If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the **EASTERN DIVISION.** Enter "Eastern" in response to Question E, below. If "no," your case will be assigned to the **WESTERN DIVISION.** Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | SOUTHERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☑ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**     ☑ NO     ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court?**
☑ NO     ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** *Moenshe Balogun*     DATE: 5/5/2017

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |